IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AUGUSTA THOMAS, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-0433 |
| DELMARVA POWER & LIGHT COMPANY, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Augusta Thomas, Jr. ("Thomas" or "Plaintiff") brings this employment discrimination action against Defendant Delmarva Power & Light Company ("Delmarva" or "Defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and Title 20 of the State Government Article, Md. Code Ann., State Gov't § 20-101, *et seq.* ("Title 20").

Pending before this Court are the Defendant's Motion to Dismiss (ECF No. 6), and Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 17). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 17) is GRANTED, and the Defendant's Motion to Dismiss (ECF No. 6) is thus DENIED as MOOT.[1]

---

[1] The pending Motion to Dismiss addresses Plaintiff's initial Complaint (ECF No. 1), and not the Amended Complaint that is the subject of this Memorandum Opinion. Delmarva has not filed a motion to dismiss the Amended Complaint. As this Court is granting Plaintiff's Motion for Leave to file an Amended Complaint, Delmarva's Motion to Dismiss the original Complaint is thus moot. Defendant's arguments in opposition to Plaintiff's Motion mirror some, but not all, of its arguments in favor of dismissing the original Complaint.

BACKGROUND

Due to the deficiencies of the original Complaint, the following facts are drawn from the Amended Complaint.

In 1983, Delmarva hired Plaintiff Augusta Thomas, Jr., an African-American male. Amend. Compl. ¶ 11, ECF No. 17-2. While an employee of Delmarva, Thomas alternately worked as a Groundsman, Lineman, Journeyman Lineman, Lead Lineman and Serviceman. *Id.* ¶ 11.

Thomas alleges that he was subject to various incidents of discrimination, harassment, and retaliation by Delmarva. *Id.* ¶¶ 13-40. These alleged incidents include: Caucasian male co-workers sought to intimidate him and other African-Americans by hanging a noose from a door handle in 2008, *id.* ¶ 13; supervisors failed to appropriately respond to this noose incident, *id.* ¶ 13-20; a picture of three monkeys with the names of three African-American employees was displayed at Delmarva's workplace in Centerville, Maryland, *id.* ¶ 21; African-American employees were treated less favorably by Delmarva as compared to Caucasian employees with regard to safety rule enforcement; and finally, African-American employees were denied promotions in favor of Caucasian employees, even when Caucasians were engaged in the same misconduct as African-American employees or were less qualified than the African-American employees, *id.* ¶ 22.

The bulk of the subject Amended Complaint arises out of an incident that began in April 2013. That month, Thomas alleges that an employee of Delmarva, Amy Swagger ("Swagger"), informed Delmarva that Thomas had made sexually inappropriate comments

during a service call to Shelia Bednar ("Bednar"),[2] who was asked by a Delmarva customer to escort Thomas to the basement of a building. *Id.* ¶ 23-24. After being notified of the incident, Paul Simon ("Simon"), Delmarva's Human Resources Business Partner, and Edward Bennett ("Bennett"),[3] Thomas's Supervisor, began an investigation. *Id.* ¶ 26. Thomas admitted he made the reported remarks during the investigation. *Id.* ¶ 27. Delmarva continued to investigate the incident, allegedly discovering that four Caucasian females accused Thomas of workplace misconduct between 2000 to 2011, *id.* ¶ 29-30, and that a customer called Delmarva in 2011 regarding Thomas, *id.* ¶ 32. Before the investigation concluded, Delmarva suspended Thomas on April 14, 2013. *Id.* ¶ 33. On June 12, 2013, Delmarva sent a letter to Thomas terminating his employment for making inappropriate comments and inappropriate conduct with employees. *Id.* ¶ 33. At some point between suspension and termination, Simon and Bennett met with Thomas's unnamed union representative, and reportedly stated that Thomas was "old enough to retire." *Id.* Thomas was discharged without affording him the benefits of Delmarva's discipline policy, wherein an employee first received a verbal warning and written reprimand prior to suspension and discharge. *Id.* ¶ 34.

In September 2013, Thomas timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Delmarva in September of 2013, alleging age, sex and race discrimination. *Id.* ¶ 35. The EEOC issued a Dismissal and a Notice of Right to sue on November 17, 2014. Thomas also filed a

---

[2] Thomas alleges that Bednar had maintenance duties for the building where Delmarva's customer was located, but was not a customer herself. *Id.* ¶ 23.
[3] Bennett was involved in the investigation of the alleged noose incident in 2008.

grievance through his union, which obtained Thomas's reinstatement, without back pay, on June 16, 2014. *Id.* ¶ 36-37.

Thomas timely filed the subject action *pro se* on February 13, 2015. Compl., ECF No. 1. Thomas alleges various acts of discrimination throughout this incident. He first asserts that Caucasians accused of similar misconduct were afforded more favorable treatment. *Id.* ¶ 39. He specifically names another employee, a Caucasian male, who was disciplined less harshly than Thomas for sexual misconduct at the workplace. *Id.* ¶ 39. Thomas also alleges that Delmarva failed to inform him of the accusations of the four Caucasian females and to permit him to give his version of the events, while Caucasian male employees involved in the noose incident were both notified of the investigation and afforded the opportunity to offer their version of the incident. *Id.* ¶ 40. In response, Delmarva filed a Motion to Dismiss (ECF No. 6). Subsequently, Thomas obtained counsel, and filed a Motion for Leave to File an Amended Complaint (ECF No 17) and the Amended Complaint (ECF No. 17-2).

## STANDARD OF REVIEW

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to file an amended complaint "shall be freely given when justice so requires." A trial judge has discretion to grant or deny leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A judge may not, however, exercise that discretion arbitrarily or in a way that undermines the liberal policy of the rule. *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."). Therefore, when facts averred by a plaintiff in a complaint "may be a proper subject of

relief," the court should allow him "an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Rule 15(a) also ensures that plaintiffs have an opportunity to cure formal defects in their pleadings. *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990)).

A court may deny leave to amend if the plaintiff seeks to amend his complaint after undue delay, in bad faith, or with dilatory motive. *Foman*, 371 U.S. at 182. Additionally, the court may deny leave to amend if amendment causes undue prejudice to the opposing party or the amendment is futile. *Id.*; *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Futility may only serve as a basis for denying a complaint where the proposed amendment is clearly insufficient or frivolous on its face. *Oroweat Foods*, 785 F.2d at 510 (citing *Davis*, 615 F.2d at 613; *Ostrzenski*, 177 F.3d at 253 ("Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.").

Rule 15(a)'s liberal standard is even more broadly construed for *pro se* litigants. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978) (holding that *pro se* civil rights litigants should be permitted to amend their complaints even if their motion for leave to amend does not state how the amendment cures deficiencies in an earlier pleading); *see generally Haines v. Kerner*, 404 U.S. 519 (1972) (holding that pleadings by *pro se* litigants should be held to a less stringent standard than litigants represented by counsel).

## DISCUSSION

In his moving for leave to file the Amended Complaint, Thomas argues that this Court should grant the requested leave because he was *pro se* when he filed the initial Complaint. Since filing the initial Complaint, Thomas retained counsel, who subsequently

drafted the proffered Amended Complaint (ECF No. 17-2) on his behalf. The Amended Complaint, according to the Plaintiff, presents a "stronger set of factual allegations than were apparent on the face of his *pro se* Complaint." Moreover, Thomas contends that granting leave to amend would hardly prejudice Delmarva given that this action is merely in its early stages.

In response, Delmarva argues that Thomas should not be permitted to amend his Complaint because his proposed amendment would be futile. Specifically, Delmarva contends that Plaintiff's proposed Amended Complaint, like the initial Complaint, fails to assert sufficient facts to state a claim, and would not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thomas disputes this argument in his reply brief, stating that he plausibly raises a prima facie claim of employment discrimination under Title VII.

Although a court may deny leave to amend a complaint if the amendment is futile, the liberal policy behind Rule 15 strongly favors resolving a case on its merits. *See Laber*, 438 F.3d at 426 (stating that Rule 15 reflects a policy that encourages resolving cases on their merits instead of disposing of them on technicalities). Indeed, the United States Court of Appeals for the Fourth Circuit has held that an amended complaint is futile only when the amendment is "clearly insufficient or frivolous on its face." *Oroweat Foods*, 785 F.2d at 510.

Thomas's Amended Complaint is not "clearly insufficient or frivolous on its face." The Amended Complaint corrects formal deficiencies in his original *pro se* Complaint, and states Thomas's claims with greater clarity. While Thomas's Amended Complaint includes some vague allegations of less favorable treatment of African-Americans by Delmarva, he

also alleges names, dates, and facts not contained in his original Complaint which support his claim of discriminatory discipline. In fact, as Thomas's Amended Complaint is significantly more detailed and thorough, permitting the filing of the Amended Complaint would be beneficial to the efficient resolution of his case. *See Fox v. Portico Reality Services Office*, 739 F. Supp. 2d. 912, 927 (E.D. Va. 2010) (holding that the plaintiff should be granted leave to file amended complaint drafted with the aid of counsel because it clarified his claims and would "facilitate the timely resolution of this matter"). Given the newly added details, this Court cannot conclude that the Amended Complaint is futile. With the newly-acquired aid of counsel, he should be afforded an opportunity to proceed with discovery with respect to his claims.

No other considerations warrant denial of Thomas's Motion. This Court can find no evidence of prejudice, undue delay, or bad faith. Thomas, now represented by counsel, will thus be permitted to file the proffered Amended Complaint.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 17) is GRANTED, and the Defendant's Motion to Dismiss (ECF No. 6) the original Complaint is MOOT.

A separate Order follows.

Dated:        February 1, 2016

_____/s/_____
Richard D. Bennett
United States District Judge