IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| AUGUSTA THOMAS, JR., | * |
| Plaintiff, | * |
| v. | *   Civil Action No. RDB-15-433 |
| DELMARVA POWER & LIGHT COMPANY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Augusta Thomas, Jr. ("Thomas" or "Plaintiff") brings this employment discrimination action against defendant Delmarva Power & Light Company ("DPL" or "defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and Title 20 of the State Government Article, Md. Code Ann., State Gov't § 20-101, *et seq.* ("Title 20") based on a series of events which resulted in his termination from his position at DPL.[1]

Currently pending before this Court is defendant's Motion for Summary Judgment (ECF No. 45) ("Defendant's Motion").[2] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below,

---

[1] Though terminated, Thomas subsequently was reinstated pursuant to union arbitration proceedings. (ECF No. 45-2 at ¶¶ 40-41.)

[2] Numerous exhibits to the parties' submissions were filed under seal. Magistrate Judge Gesner of this Court reviewed the parties' respective Motions to Seal and issued an appropriate Order, which remains in effect. (ECF No. 56.)

Defendant's Motion is GRANTED, and Summary Judgment shall be ENTERED in favor of defendant on all counts.

## BACKGROUND

In ruling on a Motion for Summary Judgment, the Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff Augusta Thomas, Jr., an African-American male, began working for DPL in 1983, performing work in a series of positions including Groundsman, Lineman, Journeyman Lineman, Lead Lineman and Serviceman. (ECF No. 45-2 at ¶¶ 1-4.)

The impetus for the instant suit was an incident that began in April 2013. That month, Thomas alleges that an employee of DPL, Amy Swanger ("Swagger"), informed DPL that he had made sexually inappropriate comments to Shelia Bednar ("Bednar"), a custodian of the building where Thomas made a service call for DPL. (ECF No. 45-2 at ¶¶ 8-10.) Thomas "asked Ms. Bednar if she 'had a boyfriend' and stated [that] he 'was available.'" (*Id.*) Bednar apparently rebuffed Thomas' advances. (*Id.*) Notwithstanding, Thomas later returned to the location where he had encountered Ms. Bednar and gave his personal cell phone number to another woman who worked there. (*Id.* at ¶ 16.)

After being notified of the incident, Paul Simon ("Simon"), DPL's Human Resources Business Partner, and Edward Bennett ("Bennett"), Thomas' Supervisor, began an investigation into Thomas' conduct. (ECF No. 45-2 at ¶¶ 12-14.) Before the investigation concluded, DPL suspended Thomas on April 14, 2013. (*Id.* ¶ 17.) During the investigation, Thomas admitted he made the reported remarks to Ms. Bednar. (*Id.*) DPL continued to

investigate Thomas' conduct and learned that four Caucasian females had accused Thomas of workplace misconduct between 2000 and 2011.  (*Id.* at ¶¶ 20-22.)  The investigation also revealed that in April 2011, DPL received a customer telephone complaint that Thomas had "flirted with [the customer's] wife," and made her uncomfortable.  (*Id.* at ¶ 26.)  Thomas was admonished for his conduct towards the customers and specifically warned not to discuss sexually suggestive matters with customers.  (*Id.* at ¶ 27.)

Based on these findings, on June 12, 2013, DPL sent Thomas a letter terminating his employment based on his inappropriate comments and conduct with employees.  (*Id.* ¶ 34.) At some point between suspension and termination, Simon and Bennett met with Thomas's union representative to address possible personnel actions; one proposed action was to permit Thomas, who had worked for DPL for many years, to retire rather than be subject to termination.  (*Id.* at ¶¶ 38-39.)  Simon and Bennett's statements in these conversations that Thomas was "old enough to retire" form the basis of Thomas' age discrimination claim.

Following his termination, Thomas pursued two separate remedies.  First, Thomas filed a grievance through his union, asserting that DPL discharged him without following the union's progressive discipline procedure. (ECF No. 45-2 at ¶¶ 38-40.)  Neither Thomas nor his union challenged the truth of the sexual harassment allegations against Thomas.  (*Id.* at ¶ 36-37.)  The grievance proceeded to an arbitrator, who concluded that discipline of Thomas for the sexual harassment was appropriate, but that termination was unwarranted under the collective bargaining agreement.  (*Id.* at ¶ 40.)  The arbitrator ordered DPL to reinstate Thomas, but without back pay.  (*Id.*)  Thomas was reinstated on June 16, 2014.  (*Id.* at ¶ 41.) Second, and pertinent to this case, Thomas filed a charge of discrimination against DPL in

3

September of 2013, alleging age, sex and race discrimination. (ECF No. 25 at ¶ 35.) The Equal Employment Opportunity Commission ("EEOC") dismissed Thomas' Charge and issued him a Notice of Right to Sue on November 17, 2014. (*Id.*)

Thomas filed his original Complaint in this Court on a *pro se* basis on February 13, 2015. (ECF No. 1.) After DPL filed its Motion to Dismiss (ECF No. 6), Thomas obtained counsel, who filed on Thomas' behalf a Motion for Leave to File an Amended Complaint (ECF No. 17). DPL's Motion was denied, and Thomas' Motion was granted by Memorandum Opinion and Order dated February 1, 2016 (ECF Nos. 23, 24), and the now-operative Amended Complaint was docketed that day. (ECF No. 25.)

Following discovery, DPL filed the now-pending Motion for Summary Judgment. (ECF No. 45.) This case was referred to Magistrate Judge Gesner to address the Motion to Seal filed with DPL's Motion and Thomas' Motion to Seal filed with his Response in Opposition. (ECF No. 43.) Magistrate Judge Gesner issued an Order on the Motions to Seal, and those rulings remain in effect.[3] (ECF No. 56.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty*

---

[3] Consistent with Judge Gesner's Order, this Memorandum Opinion refers to the redacted versions of the parties' submissions (ECF Nos. 45, 72, and 78) unless otherwise noted.

4

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

**ANALYSIS**

Plaintiff's Amended Complaint alleges discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title 20 of the Maryland Code, State

5

Government Article, § 20-101, *et seq.*, and 42 U.S.C. § 1981.  (ECF No. 25.)  This Court has explained that claims asserted under Title VII, Maryland's Title 20, and § 1981 are analyzed under the same framework.  *Barnes v. ISG Sparrows Point, LLC*, BPG-10-2492, 2011 WL 4596058, at *6 (D. Md. Sept. 30, 2011).  Although these statutory claims are analyzed under the same framework, Section 1981 is concerned with race discrimination only, whereas Title VII and Title 20 reach plaintiff's other protected characteristics.  *Id.*

## I. Plaintiff Has Abandoned His Age Discrimination Claim

While plaintiff's Amended Complaint contains certain allegations that defendant discriminated against plaintiff on the basis of age, plaintiff does not address or produce any evidence in support of these allegations in his Response in Opposition to Defendant's Motion.  (ECF No. 72.)  Accordingly, plaintiff has abandoned his age discrimination claim, and defendant is entitled to summary judgment thereon.  *See Nyonka v. MVM, Inc.*, No. PWG-15-645, 2016 WL 4240290, at *7 (D. Md. Aug. 11, 2016); *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (plaintiff "abandoned her harassment claim by failing to address that claim in her opposition to [defendant's] motion for summary judgment, or to offer clarification in response to [defendant's] reply brief").

## II. Plaintiff Fails to Establish Direct Evidence of Race or Sex Discrimination

"A plaintiff can defeat summary judgment in a discrimination action under Title VII by either of two avenues of proof: (a) through direct evidence that gender, race, or both motivated the decision not to promote him, or (b) through the burden-shifting scheme established by *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817."  *Schafer v. Maryland Dep't of Health & Mental Hygiene*, 359 F. App'x 385, 388 (4th Cir. 2009).

6

In a mixed-motive case, a plaintiff must sufficiently plead, through direct or circumstantial evidence, that his race "was a motivating factor" in his employer's decision to terminate him. *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 284–86 (4th Cir. 2004). *See Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 441–42 (D. Md. 2012). Direct evidence is defined as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 520 (4th Cir. 2006) (internal quotations omitted). Under the mixed-motive framework, this Court has held that "a plaintiff faces a demanding standard when attempting to demonstrate direct evidence." *Jordan v. Radiology Imaging Assoc.,* 577 F. Supp. 2d 771, 779 (D. Md. 2008). "To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait … actually motivated the employers' decision." *Hill,* 354 F.3d at 286.

As a threshold matter, this Court notes that plaintiff mistakenly relies on the "convincing mosaic" formulation set forth by the United States Court of Appeals for the Seventh Circuit to transform his admittedly "weak proofs" into evidence of discrimination. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). *See* ECF No. 72 at 25. While this approach is not materially different from the "totality of the evidence" approach followed in this Circuit, the United States Court of Appeals for the Fourth Circuit expressly declined to utilize the Seventh Circuit's approach. *Christian v. S.C. Dep't of Labor Licensing & Regulation*, 651 F. App'x 158, 163 (4th Cir. 2016) ("we see no reason to adopt the formulation that [plaintiff] advances here.").

7

Notwithstanding, none of the facts which plaintiff cites as direct evidence of discrimination tend to show that his gender or race was a "motivating factor" in the decision to terminate him.  *Hill*, 354 F.3d at 284–86.  While plaintiff questions DPL's decision to conduct an investigation into the sexual harassment allegations against Thomas and the manner in which DPL conducted the investigation, neither DPL's decision nor the purported deficiencies tends to show a discriminatory motive on the part of DPL.[4]  (ECF No. 72 at 26-29.)  Nor, crucially, is it within this Court's purview to assess "'the wisdom or folly of [DPL's] business judgment'" in undertaking the investigation.  *Hart*, 899 F. Supp. 2d at 441 (quoting *Jiminez v. Mary Washington Coll.,* 57 F.3d 369, 383 (4th Cir.)).  "Indeed, a Title VII claim 'is not a vehicle for substituting the judgment of a court for that of the employer." *Id.* (quoting *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 298–99 (4th Cir.1998)).  While plaintiff quite clearly disagrees with DPL's decision to investigate the allegations of sexual harassment against him, it cannot be said that Thomas' race or gender was a motivating factor in (1) its decision to investigate Thomas or (2) DPL's conduct thereof.  Thus, plaintiff's reliance on the "mixed-motive" framework is unavailing and insufficient to survive Defendant's Motion.

### III. Plaintiff Fails to Establish a *Prima Facie* Case of Race or Sex Discrimination Under the *McDonnell Douglas* Framework

Where the record contains no direct evidence of discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973).  *See Hawkins v. Pepsico, Inc.,* 203 F.3d 274, 281 (4th Cir. 2000); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir.2002) ("[T]he elements

---

[4] Nor, as defendant aptly notes in its Reply brief, are all of the purported deficiencies identified by plaintiff properly supported by record evidence.  *See* ECF No. 78 at 3-7.

8

required to establish a *prima facie* case are the same under Title VII and Section 1981."). Under this framework, the plaintiff must first present enough evidence to prove a *prima facie* case of disparate treatment. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142–43 (2000). Second, once he establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment action was taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981)). Third, the plaintiff is "afforded the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Burdine,* 450 U.S. at 253) (internal quotation mark omitted). *See also Green v. Wackenhut Sec. Inc.*, RDB-12-00264, 2013 WL 4478050, at *4 (D. Md. Aug. 19, 2013).

### a. Plaintiff Fails to Establish a *Prima Facie* Case of Discriminatory Discharge

This Court explained in *Hart v. Broadway Servs., Inc.*, RDB-11-2261, 899 F. Supp. 2d 433, 442 (D. Md. 2012), that to establish a *prima facie* case of race discrimination under Title VII, a plaintiff must produce sufficient evidence that "(1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 214 (4th Cir. 2007).

In the instant case, it is undisputed that Thomas, an African-American male, is a member of a protected class and that he suffered an adverse employment action when he was terminated. Thus, the first two elements of the race discrimination test are satisfied.

DPL argues, however, that plaintiff is unable to establish a *prima facie* case of discriminatory discharge because (1) the undisputed facts reflect that Thomas was not performing his job duties satisfactorily, and (2) he cannot show that his position was filled by anyone outside of his protected classes. (ECF No. 45-2 at 17-19.) DPL further asserts that even if plaintiff were able to establish a *prima facie* case of discrimination—which he cannot—there is no evidence of pretext which would allow him to proceed under the *McDonnell Douglas* framework. (*Id.* at 30-31.)

Thomas argues in opposition to Defendant's Motion that DPL's argument regarding Thomas' unsatisfactory job performance is "nonsensical." (ECF No. 72 at 34.) In support of this position, plaintiff states: "Even if it were required, however, to say that Mr. Thomas was not meeting expectations, when Caucasian employees who had pending discipline in their file were given satisfactory ratings is ridiculous." (*Id.* at 34-35.)[5] Notably, Thomas does not assert that he performed his job duties satisfactorily; rather, he asserts only that other employees also may have performed their work unsatisfactorily. (*Id.*) Thus, similar to much of the discussion in his brief, plaintiff asserts that his termination was pretextual. *See* Part III.b, *infra*. As to defendant's second argument, Thomas does not respond to DPL's assertion regarding Thomas' inability to show that his position was filled by a person outside of his protected classes.

Thomas' reliance on the "cat's paw" theory is misplaced. (ECF No. 72 at 38.) "The 'cat's paw' or 'rubber stamp' theory imposes liability on an employer for the discriminatory motivations of a supervisor who was 'principally responsible' for an adverse employment

---

[5] This sentence is quoted as it appears in plaintiff's brief.

10

decision, even if that supervisor was not the formal decisionmaker." *Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 443 (D. Md. 2015) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 288 (4th Cir. 2004)). As defendant properly notes in its Reply, none of the factors required to invoke this theory are present in this case. *See* ECF No. 78 at 19-20.[6]

The undisputed evidence before this Court indicates that Thomas' work performance was not satisfactory. Thomas engaged in a pattern of conduct with at least two customers and four co-workers which violated DPL's Policy Against Sexual Harassment over many years, in violation of express warnings to not engage in such conduct, and to the detriment of his co-workers and DPL customers. (ECF No. 45-2 at ¶¶ 5-7, 14-16.) Indeed, Thomas admitted to having engaged in such offensive conduct both during DPL's investigations into complaints about Thomas' undesired sexual advances on Ms. Bednar, and during his deposition testimony in this case. (Thomas Dep., ECF No. 22-4 at 43-45; 53-55.) Thus, even viewing all evidence in the light most favorable to Thomas, it cannot be said that his work performance was satisfactory or that he met "his employer's legitimate expectations at the time of the adverse employment action." *Hart*, 899 F. Supp. 2d at 442.

In addition, Thomas presents no evidence which would tend to show that DPL replaced Thomas with a person outside of his protected class. There is no indication in the record that DPL replaced Thomas in his position during the time between his termination and subsequent reinstatement. Thus, Thomas is unable to prove the final element of a *prima*

---

[6] This Court notes that among the individuals involved in the decision to discharge Thomas were persons within both of his protected classes: male (Paul Simon) and African-American (Cherie McCoy). (ECF No. 45-2 at 14, 34.)

11

*facie* claim—that his "was filled by similarly qualified applicant[s] outside the protected class." *Holland*, 487 F.3d at 214.

In sum, Thomas fails to establish a *prima facie* case of discriminatory termination, and defendant is entitled to Summary Judgment on Thomas' claims.

### b. Even if Thomas Established a *Prima Facie* Claim—Which He Did Not—He is Unable to Show That His Termination Was Pretextual

Even if Thomas were able to establish a *prima facie* case of discrimination—which he has not—he is unable to show that his termination for violating DPL's sexual harassment policies was pretextual. In support of his pretext argument, plaintiff identifies a series of purported comparators whose treatment, Thomas asserts, differed from his own so as to suggest that Thomas' termination was pretextual. (ECF No. 72 at 25.)

DPL argues that plaintiff's purported comparators are legally insufficient to demonstrate pretext, as their allegedly different treatment was either too remote temporally, attributable to different decision-makers than those who decided to terminate plaintiff, or factually distinguishable so as to render the comparators' treatment insufficient. (ECF No. 78 at 9-14.)

To establish pretext using comparators, a plaintiff must "demonstrate that the comparator was 'similarly situated' in all relevant respects." *Hurst v. District of Columbia*, PWG-12-2537, 2015 WL 1268173, at *3 (D. Md. Mar. 16, 2015), *aff'd,* No. 15-1410, 2017 WL 908208 (4th Cir. Mar. 7, 2017) (quoting *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 420 (D. Md. 2015)). "This means that the plaintiff must show clearly that the employees dealt with the same supervisor, were subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would

distinguish their conduct or the employer's treatment of them for it. Notably, the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel…Thus, if different decision-makers are involved, employees are generally not similarly situated. Indeed, to be similarly situated the employees must have been disciplined by the same supervisor." *Hurst*, 2015 WL 1268173, at * 3 (internal citations omitted).

Here, five of the purported comparators identified by plaintiff (D.A., H.I., G.F., J.A., K.B.[7], and R.B.) were disciplined more than *ten* years before plaintiff. (ECF No. 78 at 9.) In *Hurst*, however, this Court rejected the plaintiff's reliance on comparators subject to discipline only *five* years removed. *Hurst*, 2015 WL 1268173, at *7. Similarly, plaintiff relies on several comparators (D.A., H.I., R.B., and B.B.) who were disciplined by different decision-makers. This Court also has rejected reliance on comparator evidence where the employees were not disciplined by the same supervisor. *Id.* at * 3.

Crucially, Thomas is unable to show that any of the remaining comparators were treated differently for committing similar workplace misconduct. G.R. was disciplined for making isolated, improper comments—not the sort of repeated conduct with customers and employees over a multi-year period. (ECF No. 72 at 22.) E.R. was disciplined for taking excessive breaks during work hours—workplace misconduct which bears no resemblance at all to plaintiff's sexual harassment. (*Id.*)

---

[7] Although defendant does not refer to K.B. in its discussion of 'untimely' comparators, plaintiff argues that K.B's alleged misconduct occurred in or around 2000—well outside of the permissible window. (ECF No. 72 at 22.)

In sum, plaintiff's reliance on the purported comparators fails to demonstrate that his hiring was pretextual. Thus, even if plaintiff had established a *prima facie* case of discrimination, defendant would still be entitled to summary judgment on plaintiff's claims.

## CONCLUSION

For the reasons stated above, Defendant's Motion (ECF No. 45) is GRANTED, and Summary Judgment shall be ENTERED in favor of defendant on all counts.

A separate Order follows.


Date:  July 28, 2017                            _____/s/_____
                                                Richard D. Bennett
                                                United States District Judge